UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH MORGAN and
JAMES CHAPMAN,

    Plaintiffs,

v.                                              Case No. 05-73583
                                                Hon. Victoria A. Roberts

THOMAS WESTHOFF, JOSHUA MONTE
and CITY OF ROMULUS,

    Defendants.
_____

### ORDER GRANTING IN PART, AND DENYING IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

This matter is before the Court on Defendants' Motion for summary judgment. For the following reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion.

**II.    BACKGROUND**

This action arises out of the arrest of Plaintiffs, Deborah Morgan ("Morgan") and James Chapman ("Chapman"). On April 19, 2003, Plaintiffs were arrested for alleged home invasion of 39185 Chase Road, in the City of Romulus. Morgan jointly held title to the home, along with Gerald Warsop ("Warsop"), the ex-boyfriend of Morgan.

On April 19, 2003, Chapman parked his car and boat in the driveway of 39185 Chase Road, where Warsop continued to reside. Morgan alleges Warsop called her

1

that morning and threatened to damage the boat and car.  She and Chapman drove to 39185 Chase Road.  Warsop was not there.  They called police when they realized there was damage to the windshield of the car.

Plaintiffs claim they entered the home through the unlocked doors in the garage.  They decided to change the locks on the home.  Plaintiffs left the home to go to Home Depot.

Defendants, Officers Thomas Westhoff ("Westhoff") and Joshua Monte ("Monte"), arrived while Plaintiffs were in the process of removing the old doorknobs.  Plaintiffs admitted they entered the residence, but told the Officers that Morgan was a co-owner of the home and paid the mortgage.  She claims she showed them cancelled checks from mortgage payments to support her claim of ownership.  Additionally, her driver's license bore the 39185 Chase Road address.

While Officers were on the scene, Warsop returned home.  Chapman began yelling at Warsop and Officers decided to handcuff Chapman.  Warsop admitted that he damaged the car.

Officers did not arrest Warsop, but did arrest Plaintiffs for home invasion.  Plaintiffs were jailed over the weekend.  They were released on Monday when the charges were dropped following verification that Morgan was a co-owner of the home.

On September 19, 2005, Plaintiffs filed a Complaint.  An Amended Complaint was filed October 31, 2005 alleging: (1) violation of 42 USC §1983 by the Officers based on the 4th Amendment; and (2) municipal liability against the City of Romulus under 42 USC §1983.

Defendants filed a Motion to dismiss on the pleadings or for summary judgment

on June 2, 2006.

## III. STANDARD OF REVIEW

The same standard applicable to motions pursuant to FRCP 12(b)(6) is applicable to motions for judgment on the pleadings pursuant to FRCP 12(c). *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005)(citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-512 (6th Cir. 2001)).

"Dismissal pursuant to a Rule 12(b)(6) motion is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)(citation omitted). The court must construe the complaint in a light most favorable to the plaintiff, and accept all of his factual allegations as true. *Id*. When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Id*.

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v.*

*Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## IV. APPLICABLE LAW AND ANALYSIS

### A. Claim Against Officers

Plaintiffs allege they were arrested in violation of the 4th Amendment because the Officers did not have probable cause to believe they committed a crime. Defendants[1] argue they had probable cause, and even if they did not, they are entitled to qualified immunity.

"Qualified immunity analysis involves three inquiries: (i) whether, based upon applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred; (ii) whether the violation involved a clearly established constitutional right of which a reasonable person would have known; and (iii) whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).[2]

### 1. Did Violation of a Constitutional Right Occur?

Plaintiffs allege violation of their Fourth Amendment rights based on the allegedly unreasonable search and seizure when they were arrested for home invasion at 39185 Chase Road. "It is [sic] well-settled principle of constitutional jurisprudence that an

---

[1] For purposes of this section, "Defendants" refers only to Officers Monte and Westhoff.

[2] Some courts employ a two step analysis for qualified immunity, however, both the two step and the three step approach are consistent with Supreme Court precedent. *Causey v. City of Bay City*, 442 F.3d 524, 528 (6th Cir. 2006).

arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." *U.S. v. Romero*, 452 F.3d 610, 615 (6th Cir. 2006).

Whether there was a constitutional violation turns on whether the Officers had probable cause.

In order to determine whether Plaintiffs' arrests were supported by probable cause, the Court must determine whether "at that moment the facts and circumstances within [Defendants] knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent person in believing that [Plaintiffs] had committed or were committing an offense." *Id*.

Courts use a totality-of-the-circumstances approach to determine if an arrest was supported by probable cause. *Id*. at 616. "While probable cause means that officers must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt." *Id*.

Plaintiffs were arrested for home invasion pursuant to MCL 750.110a:

(3) A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission, and at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the second degree.

*  *  *

Plaintiffs claim Officers did not have probable cause because they knew or should have known that Morgan was a co-owner. Chapman's claim depends on the outcome of Morgan's claim; he asserts he had permission to be in the residence from

5

Morgan, a co-owner.

Morgan testified that she told the Officers she was a co-owner; her driver's license showed the 39185 Chase Road address; and, she showed the Officers cancelled checks showing she made mortgage payments. Morgan also claims that Officer Donald Leonard, a back-up officer called to the scene, was aware that she was a co-owner from an earlier domestic violence charge against Warsop. Lastly, Morgan claims Warsop himself, and his mother Lois Wiertella ("Wiertella"), told the Officers that she was a co-owner:

> Q. What did you hear Mrs. Wiertella tell them?
>
> A. Not to tow my vehicle and not to arrest me. It might not be her exact words.
>
> Q. Did she tell them that you owned the house?
>
> A. Yes, along with her son and we were at court; we were taking care of the matter.[3]
>
> Q. Did you hear Mr. Warsop say that you own the house?
>
> A. He admitted that I was on there, yes. Because he even made a comment to the officers, he said to the fact, it's up to you about - he didn't care about [Chapman], but he didn't want anything to happen to me.
>
> Q. When you say that Mr. Warsop admitted that you were on it, are you talking about on the title?
>
> A. Yes, that we were co-owners.
>
> Q. Who did you hear Mr. Warsop say this to?
>
> A. I don't recall. I was so distraught at that time.

---

[3]Morgan and Warsop were involved at that time in litigation concerning ownership of the 39185 Chase Road residence.

> Q. Did you hear him say it to a police officer?
>
> A. The officers were over there, yes.

[Response, Exhibit 2, pp.33-34].

Warsop's testimony corroborated Morgan's:

> Q. Did you make it clear to the police officers that Deborah Morgan was co-owner of the home?
>
> A. Yes. They had been there before; they knew the situation.
>
> Q. And they had been there before when, the domestic violence?
>
> A. Yes.
>
> Q. Different police officer, same police officer?
>
> A. It was the same one.

[Response, Exhibit 7, pp.43-44].

Wiertella also testified that she told the Officers that Morgan was a co-owner, and she overheard her son, Warsop, tell the Officers that Morgan was a co-owner. [Response, Exhibit 6, pp.23, 25, 28, 30, 36].

Defendants deny that Warsop or Wiertella told them Morgan was a co-owner of the home. However, the Court must take the facts in the light most favorable to Plaintiffs. For purposes of this Motion, the Court assumes Warsop and Wiertella did tell the Officers that Morgan was a co-owner.

Nonetheless, Defendants claim that a L.I.E.N.[4] search revealed a Belleville address for Morgan, the same address she gave as her residence. Plaintiffs admitted

---

[4] Law Enforcement Information Network - a database maintained by the Michigan State Police.

7

they had entered 39185 Chase Road, and Officers observed signs of forced entry. The Officers claim Warsop indicated he did not consent to Plaintiffs' entry. Officers noted that Morgan did not have a key; and that she and Chapman were in the process of removing the door knobs. Based on those observations, Officers determined they had probable cause to arrest the Plaintiffs for home invasion.

In *Radvansky*, the court reversed a district court's grant of summary judgment, finding that the officers did not have probable cause to arrest Radvansky. Radvansky rented a room from Derrick Rosemark ("Rosemark") at a home on Redwood Drive. Rosemark claimed the plaintiff owed him back rent, so he decided to kick him out of the house. Rosemark changed the locks, which prevented Radvansky from accessing his belongings. Radvansky went to the house when Rosemark was not there and attempted to break in to get his things. After his attempt failed, he left for the evening. A neighbor called police but they arrived after Radvansky left. However, Rosemark returned home and informed the officers that Radvansky used to live there, that he still had belongings there, and that there was a dispute about payment.

Radvansky returned the next night and successfully gained entry by breaking a window. While he was inside, the neighbor called officers again, who arrived while he was in the home. Radvansky immediately told officers he lived there. Officers investigated and found that his driver's license, a check of his social security number and a police printout all indicated that Radvansky's address was Redwood Drive. He also tried to show officers a letter written by Rosemark saying he owed back rent - to prove he was a renter at the Redwood residence. However, the officers refused to read it. Radvansky told the officers that all of his belongings were in the house, but they

refused to check. Officers arrested Radvansky for burglary.

The court noted that whether officers had probable cause to arrest Radvansky turned on whether they knew or should have known he was a current tenant. The court held "[a] police officer has probable cause only when he discovers *reasonably reliable information* that the suspect has committed a crime...in obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence...the officer must consider the totality of the circumstances, recognizing both inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest." *Radvansky*, 395 F.3d at 305 (citing *Gardenhire v. Schubert*, 205 F.3d 303 (6th Cir. 2000)(emphasis original).

The *Radvansky* court held "[t]he sole evidence which supported a charge of criminal trespass, the required element for burglary, was Rosemark's word. In light of the officers' pre-existing knowledge about the dispute between Radvansky and Rosemark, as well as the skeptical view in which statements made by interested parties should be judged, Rosemark's word is not reasonably reliable information which could establish probable cause." *Radvansky*, 395 F.3d at 307. The court also noted that Radvansky made repeated protestations that he lived there; produced undisputed documentary evidence which supported that claim; and his personal property, clothing, and furnishings were in the house. *Id.* Thus, the court held that "viewing the evidence in the light most favorable to Radvansky, we conclude the district court erred in finding [the officers] actions were supported by probable cause." *Id.* at 310.

Applying *Radvansky* to the facts of this case also leads to the conclusion that, taking the facts in the light most favorable to Plaintiffs, the Officers did not have

probable cause to arrest Plaintiffs for home invasion.

Similar to the officers in *Radvansky*, Defendants chose to ignore exculpatory evidence. Morgan claimed she was a co-owner, and produced cancelled checks for mortgage payments. She claims Officer Leonard responded to a call previously, when Morgan was a resident at the home. Morgan's driver's license still showed the 39185 Chase Road address. Warsop, the undisputed resident of the home, and his mother, Wiertella, told Defendants that Morgan was a co-owner.[5] Defendants observed Morgan and Chapman changing the locks on the residence - which is an odd activity for someone committing home invasion, but is consistent with being the co-owner of a property. Additionally, Defendants do not dispute that they knew it was Plaintiffs who contacted them initially, which is a further indication that this was likely not a home invasion.

Lastly, Defendants claim  - that even if they knew Morgan was a co-owner, they still had probable cause to arrest her - is unavailing. They claim that she could have been a landlord attempting to use self-help to evict Warsop, which is against the law in Michigan. MCL 600.2918. However, the only support for that contention is that Morgan changed the locks, which is consistent with a landlord employing self-help. But, looking at the totality of the circumstances, a reasonable officer could not have believed he had probable cause to arrest Plaintiffs because Morgan was a landlord attempting self-help.

---

[5]While Defendants contend that Weirtella told Officer Leonard, not Defendants, that Morgan was a co-owner, that is irrelevant. It is well-settled that under the doctrine of collective knowledge, for purposes of establishing probable cause, information is imputed to all officers working in close communication. *U.S. v. Yoon*, 398 F.3d 802, 812-813 (6th Cir. 2005)(Gilman, R. dissenting)(citations omitted).

Morgan told the Officers she was a co-owner *with Warsop*. Clearly, Morgan could not be the landlord if she co-owned the property with the alleged tenant, Warsop. Furthermore, Warsop and Wiertella testified they told the Officers that Morgan was a co-owner - *with Warsop*.

This record supports a conclusion that if Plaintiffs' allegations are proven, these Officers had no probable cause to arrest Plaintiffs.

### 2. Did the Violation Involve a Clearly Established Constitutional Right?

Viewing the evidence in a light most favorable to Plaintiffs, they can establish that the Officers violated their Fourth Amendment rights. The next step is to determine if the right was clearly established.

"It is beyond doubt that in [2003] the law was clearly established that, absent probable cause to believe that an offense had been committed, was being committed, or was about to be committed, officers may not arrest an individual." *Radvansky*, 395 F.3d at 310.

### 3. Did Plaintiffs Present Sufficient Evidence that Defendants' Actions were Objectively Unreasonable in Light of the Clearly Established Constitutional Right?

The question is whether a reasonable officer in the Defendants' position would have known that arresting Plaintiffs was a violation of their Fourth Amendment rights under the circumstances. See *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)(citation omitted).

Taking the facts in a light most favorable to Plaintiffs, it was objectively unreasonable for Defendants to arrest Plaintiffs for home invasion under the circumstances. While there was some evidence to suggest a home invasion - the signs of forced entry and Plaintiffs presence in the home without permission - the totality of the evidence clearly indicates this was not a home invasion. Most notably, Plaintiffs present evidence that Warsop, the person who Defendants knew to reside in the home, told them Morgan was a co-owner. That, in combination with Wiertella and Morgan maintaining that Morgan was a co-owner; Morgan's cancelled checks for mortgage payments; the fact that she called the police herself; and, that she was changing the locks; make it unreasonable for an officer to believe he had probable cause to arrest Morgan for home invasion.

Interestingly, Defendants do not even argue in their Motion that they are entitled to qualified immunity with respect to a charge of home invasion. Rather, they allege that they are entitled to qualified immunity because "Defendants reasonably believed that, at most, Ms. Morgan had a landlord-type relationship with Mr. Warsop" and she was attempting self-help in violation of MCL 600.2918. As noted above, no reasonable officer could believe there was probable cause to arrest Plaintiffs on this basis because Morgan, Warsop and Wiertella told Officers that Morgan was a co-owner with Warsop - so they could not reasonably believe he was a tenant in a home that he co-owned.

Accordingly, Defendants are not entitled to qualified immunity.

### B.   Claim Against City

Plaintiffs allege municipal liability against the City of Romulus for: (1) failing to train officers in the proper procedures for investigating and effectuating arrests; (2)

failing to supervise officers to ensure they are acting in the best interests of those with whom they come in contact; and (3) failing to supervise or discipline officers it should have known were acting contrary to policies and procedures. [Complaint, ¶17].

Defendant alleges there is no basis for imposing §1983 liability against it because Plaintiffs fail to establish that it had a policy or custom of failing to train, supervise, or discipline, or that the policy or custom was adopted by policy makers with deliberate indifference toward individuals' constitutional rights. [Motion, p.20].

Plaintiffs do not respond to Defendant's allegation. Instead, they ask the Court to withhold ruling on the municipal liability issue until they have the opportunity to take the depositions of Defendants' policy making officials. Plaintiffs claim they noticed the depositions but that they were deferred pending the outcome of this Motion.

"The general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance v. U.S.*, 90 F.3d 1145, 1148 (6th Cir. 1996). The non-movant bears the obligation to inform the district court of the need for discovery. *Id*. at 1149. "Thus, before a summary judgment motion is decided, the nonmovant must file an affidavit pursuant to Fed.R.Civ.P. 56(f) which details the discovery needed, or file a motion for additional discovery." Because Plaintiffs did neither, they failed to make a proper and timely showing of a need for discovery. Further, Plaintiffs do not offer a justification for the delayed depositions or how the depositions will likely support their claim.

Accordingly, the Court denies Plaintiff's request to withhold judgment, and grants summary judgment in favor of Defendant City of Romulus. Plaintiffs fail to establish a basis for §1983 liability.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part, and **DENIES** in part, Defendants' Motion for judgment on the pleadings or for summary judgment.

**IT IS SO ORDERED.**

                                        **S/Victoria A. Roberts**
                                        **Victoria A. Roberts**
                                        **United States District Judge**

**Dated:  August 18, 2006**

---

**The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 18, 2006.**

**S/Carol A. Pinegar**
**Deputy Clerk**

---

14